# DECLARATION OF EFREN C. OLIVARES, RACIAL AND ECONOMIC JUSTICE PROGRAM DIRECTOR, TEXAS CIVIL RIGHTS PROJECT

I, Efrén C. Olivares, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct. If called as a witness, I could and would testify as follows.

1. I am an attorney licensed to practice law in Texas. Since December 2013, I have been employed at the Texas Civil Rights Project ("TCRP"), first as a staff attorney and currently as its Racial and Economic Justice Program Director. As Program Director, I engage in the direct representation of noncitizen children and supervise attorneys and other staff at TCRP who represent immigrants, including children, whose civil rights have been violated.

2. I have been practicing law since 2008. I focus my practice on civil rights law, with a particular focus on immigrants and the violation of the rights of children. Prior to joining TCRP, I worked as an attorney at Fulbright & Jaworski LLP, and at the Inter-American Commission on Human Rights.

### TCRP's Mission and Scope

3. TCRP is a nonprofit legal and advocacy civil organization with offices throughout Texas. TCRP believes that legal advocacy and litigation are critical tools to protect and advance the civil rights of everyone in Texas, particularly our State's most vulnerable populations, and to effect positive and lasting change to law and policy. We believe that by serving the rising social justice movement in Texas with excellent legal representation and bold strategies, we can respond to the needs of the communities we serve.

4. For thirty years, TCRP has been dedicated to upholding the human and civil rights of all persons in Texas. The Racial and Economic Justice Program routinely represents immigrant and asylum-seeking families and unaccompanied children.

1

5.      A central part of TCRP's mission is providing free consultations and legal services to immigrant families and unaccompanied children detained in the Rio Grande Valley in South Texas. Until recently, this work has involved assisting families who were separated under the Zero Tolerance Policy, representing immigrant families and unaccompanied children who have been harmed while held in federal immigration detention, and, when necessary, representing separated families throughout the process of obtaining medical care in detention and family reunification.

6.      TCRP also represents immigrant children in other settings, such as in connection with complaints to the Office of Civil Rights and Civil Liberties regarding their treatment in detention and, when necessary, representing them throughout the process of obtaining relief from the federal government for violations of their rights in detention.

7.      In addition to our own legal team, TCRP leverages its expertise by working directly with pro bono attorneys on many of its cases to ensure that unaccompanied children and immigrant families have access to representation. In the last year, TCRP has assisted over one hundred immigrant families by securing pro bono representation in their asylum and related immigration proceedings.

8.      In addition to free legal services, TCRP also advocates for its clients outside of the courts. Through advocacy, education, and outreach, TCRP aims to ensure the safety and fairness of the immigration and asylum system. TCRP often conducts "Know-Your-Rights" presentations for immigrants and their families, and engages in research and fact finding related to the systemic rights violations that deny families and children the right to safely apply for asylum in the United States.

9. In the last two years, more than half of my program's legal cases have been on behalf of immigrants and their families, including unaccompanied children whose rights have been violated.

10. Our goal in all of our work on behalf of immigrants is to ensure that every person has a fair opportunity to establish their eligibility for protection and is not wrongfully removed to a place where they may face persecution or torture. Reaching unaccompanied children, and effectively representing them, is essential to our mission of ensuring that they have a chance to fully develop and present their claims.

**Our Work Defending Children Facing Expulsion under Title 42**

11. On March 26, 2020, the Centers for Disease Control and Prevention ("CDC") issued an order citing the public health provisions of Title 42 of the U.S. Code "to suspend the introduction of all individuals seeking to enter the U.S. without proper travel documentation"[1] across the northern and southern borders. The CDC has since extended the order indefinitely.

12. The Department of Homeland Security (DHS) and its subcomponents CBP and U.S. Immigration and Customs Enforcement (ICE) have held unaccompanied children who cross the southern border in hotels.

13. As part of our work to protect the rights of unaccompanied children, TCRP is currently counsel for G.Y.J.P., an unaccompanied minor who was expelled to El Salvador under this practice, in the law suit captioned *G.Y.J.P. v. Wolf, et al.*, 1:20-CV-01511-TNM, in the District of Columbia.

14. In the few cases where we have learned of a child being held for expulsion under Title 42, it is because his or her family member in the United States contacts us.

---

[1] 85 FR at 16,563; *see* 42 C.F.R. § 71.40(a).

15. Whenever we have identified a child in the United States who we have reason to believe is being subject to Title 42, we have advocated on their behalf in a number of ways, always racing against the clock to try to get to the children before they are expelled.

16. In some cases, we have contacted counsel for Customs and Border Protection in the Rio Grande Valley Sector, requesting that the child be removed from Title 42, or we'd file a TRO on their behalf. In other cases, we have asked the ACLU to contact DOJ attorneys requesting the same.

17. In one recent case, we advocated on behalf of three Guatemalan children who were about to be expelled, and were able to prevent it, we were told, the day they were scheduled to be expelled.

18. In another recent case, we worked on behalf a Honduran teenager who was trafficked and raped during her attempt to make it to the United States. Despite her ordeal and her eligibility for relief under U.S. law, she was about to be expelled. We were able to advocate on her behalf and prevent her imminent expulsion.

19. On July 23, 2020, TCRP attorneys sought to offer free legal services to children who DHS was holding at the Hampton Inn Hotel in McAllen, Texas. Unidentified men, who appeared to be contractors of DHS, refused to permit TCRP attorneys to offer any legal services to these children. In one instance, these men shoved and expelled a TCRP attorney using force, after he attempted to offer legal representation to the children. These men did not wear any identification and refused to identify themselves, ignoring repeated requests and thwarting TCRP's ability to identify those individuals who are responsible for guarding the children in their custody.

20. Because TCRP was not allowed to directly offer legal services to the children, we have been forced to stand on the sidewalk outside of the hotel and hold up a banner with a hotline. Our understanding is that the children are not permitted to make phone calls other than those authorized to relatives by DHS, and indeed no unaccompanied child has contacted us since we began holding up these banners outside the hotel.

21. There is no way for us to know whether the Hampton Inn is the only unlicensed, non-official site in the Rio Grande Valley Sector in which DHS is holding children prior to expulsion. Additionally, there is no way to know whether DHS will transfer a child to another site before expelling the child. Therefore, even if TCRP is able to contact a child, it is uncertain whether TCRP will be able to continue to know the location of the child or accurately be able to report that location to a family member.

22. Our experience with one client and identifying other children suggests that it will be virtually impossible for TCRP to identify most children prior to their removal under Title 42—even children who have family in the United States and face severe risk of harm in their countries of origin.

23. DHS's decision to hold children in hotels under Title 42 and deny attorneys access to the hotel thwarts the children's ability to raise their asylum and protection claims.

24. To address the harm caused by the agency to the unaccompanied children, it is essential that DHS and its subcomponents be enjoined from continuing to detain unaccompanied children in hotels, and from blocking the children's access to attorneys. The government does not provide children with "Alien numbers" under the Title 42 Process, as they do with other noncitizens in the immigration system. Knowing the person's A-number is essential for children to be able to assert their rights. Many times DHS, HHS, and USCIS will not provide

information about a child unless that child has an alien number, and the tracking systems that families and lawyers can use to find people in government immigration detention facilities rely on these alien numbers. Thus unless the government is enjoined, its practices will result in unaccompanied children never having the opportunity to contact an attorney; to apply for asylum; to receive an A number; or to be found by their family through the agency's immigration detention tracker.

                                                                                                    Efrén C. Olivares

                                                                        Executed this 24th day of July 2020