## DECLARATION OF MARIA ODOM

1. I, Maria Odom, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct. If called as a witness, I could and would testify as follows.

2. I am an attorney licensed to practice law in the State of Georgia. Since 2017, I have been Vice President for Legal Programs (formerly named Legal Services) at Kids in Need of Defense (KIND). I previously served as the U.S. Department of Homeland Security (DHS) Citizenship and Immigration Services Ombudsman (2012-2017), as Executive Director of the national legal services organization Catholic Legal Immigration Network, Inc. (CLINIC) (2009-2012), and as an immigration attorney in private practice.

3. In my role, I lead KIND's Legal Programs Team, comprising approximately 145 attorneys, social service professionals, and support staff across KIND's Headquarters and ten field offices.

### About KIND

4. Kids in Need of Defense (KIND) is a national non-profit organization, founded in 2008 by the Microsoft Corporation and UNHCR Special Envoy Angelina Jolie, to provide free legal services to refugee and immigrant children who arrive in the United States unaccompanied by a parent or legal guardian, and face removal proceedings in Immigration Court.

5. KIND, Inc. is a nonprofit corporation organized under the laws of the District of Columbia, with headquarters at 1201 L. St., NW, 2nd Fl., Washington, DC 20005. KIND also serves children through its ten field offices, located throughout the country in Atlanta, GA; Baltimore, MD; Boston, MA; Houston, TX; Los Angeles, CA; New York, NY; Newark, NJ; San Francisco and Fresno, CA; Seattle, WA; and Washington, DC and Northern Virginia, and through additional staff in El Paso, TX and San Diego, CA. These field offices serve children through a

combination of direct representation and the recruiting, training, and mentoring of pro bono counsel.

6.  Since 2009, KIND has received referrals for more than 20,400 children from 74 countries, and has trained and mentored pro bono attorneys at more than 670 law firms, corporate legal departments, law schools, and bar associations. In 2019, 2,643 children were referred to KIND for legal services.

7.  KIND's services include conducting screenings and know-your-rights presentations to unaccompanied children in government custody; educating parents and sponsors of unaccompanied children on the children's legal rights and obligations with respect to their removal proceedings; providing direct representation of children in their immigration-related proceedings, including in immigration court and before federal and state agencies; and connecting immigrant children with pro bono lawyers for representation in immigration-related matters.

8.  It is central to KIND's mission to ensure children's access to the full measure of substantive and procedural protections that the law affords. KIND also advocates for laws, policies, and practices to enhance protections for unaccompanied immigrant children in the United States, and is working to build a stronger regional protection framework throughout Central America and Mexico. KIND educates policymakers, the media, and the broader public about the violence and persecution that drive children to migrate and seek safety in the United States, and about their needs for legal protection.

9.  Many children served by KIND and its partners have endured serious harms, and many request and receive protection under United States law. When KIND staff identify a child as potentially eligible for lawful immigration status or other relief from removal, the child may be

matched with a free attorney on KIND's staff or with pro bono counsel to assist in preparing a request for such status or relief to the appropriate adjudicator(s).

10. A growing share of KIND's cases involve representation of unaccompanied children held in the custody of the Department of Health and Human Services (HHS) Office of Refugee Resettlement (ORR). As a subcontractor to ORR, KIND provides know-your-rights presentations and legal representation to children in detention, long-term foster care, and other custodial programs through our Seattle, Houston, San Francisco, New York, and Boston offices. For example, since beginning a detained program at the Cayuga Centers in the Bronx, New York in 2019, KIND has served over 465 children there.

11. In 2019, KIND expanded its legal and advocacy work in Mexico and along the U.S.-Mexico border. We work closely with Mexican child welfare agencies on cases of vulnerable children in their custody. KIND provides training to a number of Mexican stakeholders on U.S. legal protections and custody protocols for unaccompanied children. We have provided legal orientations to children in Mexico who have subsequently presented at a U.S. port of entry seeking asylum. KIND tracks these cases and, after children are released from ORR shelters, we either represent the children in their immigration cases or refer them to legal service providers in the areas where they go to live, if outside our service areas. In exceptional cases—where a child we meet in Mexico has significant medical needs or is particularly vulnerable—we coordinate with the U.S. government to ensure the child receives appropriate services in U.S. custody.

**KIND's work since March 2020**

12. In March 2020, the Centers for Disease Control and Prevention (CDC) issued an interim final rule and a related order[1] invoking, for the first time, decades-old public health authorities and purporting to direct U.S. Customs and Border Protection (CBP) to expel nearly all asylum seekers who reach the U.S.-Mexico border, purportedly to avoid "introduction" of the pandemic infectious disease Covid-19.

13. KIND has articulated its objections to this Title 42 Process in a number of public statements, including a comment letter on the CDC interim final rule and a statement for the record for a Senate oversight hearing.[2] We have noted that, "by stripping children of vital legal protections and any meaningful opportunity to seek humanitarian relief before being returned," the CDC order, and CBP's implementation of it, expose children to "a heightened risk of human trafficking and persecution," in contravention of the 2008 Trafficking Victims Protection Reauthorization Act (TVPRA).[3]

---

[1] Centers for Disease Control and Prevention, *Control of Communicable Diseases; Foreign Quarantine, Suspension of Introduction of Persons into the United States from Designated Foreign Countries or Places for Public Health Purposes*, 85 Fed. Reg. 16559 (Mar. 24, 2020); Centers for Disease Control and Prevention, *Notice of Order Under Sections 362 and 365 of the Public Health Service Suspending Introduction of Certain persons From Countries Where a Communicable Disease Exists*, 85 Fed. Reg. 17060 (Mar. 26, 2020).

[2] Letter to Kyle McGowan, Re: CDC-2020-033, Control of Communicable Diseases, etc., RIN 0920-AA76 (April 23, 2020), *available at* https://supportkind.org/wp-content/uploads/2020/04/CDCRuleFinal_4.23.20.pdf; Statement for the Record by Kids in Need of Defense (KIND), "CBP Oversight: Examining the Evolving Challenges Facing the Agency," Senate Committee on Homeland Security and Governmental Affairs (June 25, 2020), *available at* https://supportkind.org/wp-content/uploads/2020/06/KINDs-Statement-for-the-Record-June-25-2020.pdf.

[3] Statement for the Record, *supra*, at 1.

14. KIND's programs at ORR shelter facilities have received very few new clients since the order went into effect, as the shelter facilities have largely ceased receiving new asylum-seeking children from the border. According to ORR data, the average number of unaccompanied children (UACs) referred to ORR in fiscal year 2020 has plummeted from 60-80 per day from October 2019 through March 2020, to just 2 per day in April and 1 per day in May.[4]

15. Ordinarily, those children would be referred to the custody of ORR, where they would be placed into regular removal proceedings before an immigration judge. KIND, along with other organizations and lawyers, would then represent the children in their immigration-related matters and help them seek humanitarian protection in the United States. The Title 42 Process prevents unaccompanied children from reaching ORR custody in the first instance, however, meaning that the children can never access our services.

16. Because the vast majority of children subject to the Title 42 Process never reach ORR custody, we only hear of those rare cases where the child or a consular official manages to contact a parent or relative in the United States or in their home country. Sometimes that parent or relative then reaches out to lawyers they know, and those referrals eventually reach us. Due to the speed of the expulsions, and the secrecy concerning where the children are held by the time we hear of the child's case, they have often already been deported.

17. For the first months the Title 42 Process was in operation, we heard of no children who were in the course of a Title 42 expulsion while they were still in the United States. But in a few recent instances, we have managed to contact the child's family while the child is still in the

---

[4] HHS, Latest UAC Data – FY2020, *at* https://www.hhs.gov/programs/social-services/unaccompanied-alien-children/latest-uac-data-fy2020/index.html (last visited July 23, 2020).

5

country. In those few instances, we have entered appearances for the child with DHS. In each case, we have successfully delayed the child's deportation to ensure safe transport and reception in country of origin, or have gotten them sent to ORR instead of deportation, either via advocating directly with DHS officers, or by contacting Plaintiffs' counsel in this case who then advocate with Defendants to refer the child to ORR custody. The representation of counsel thus has a meaningful impact on the cases of unaccompanied children in the Title 42 Process—otherwise, the children would have been deported with no access to counsel.

18. Even though we have achieved limited success in a few cases, the operation of the Title 42 Process prevents us from reaching the vast majority of children subject to it, and the cases described in the preceding paragraph are a mere drop in the bucket. Our understanding is that children were usually expelled in a matter of days, or at most a week. The speed and secrecy of the deportations therefore prevents meaningful access to a lawyer. Until recently, there was very little public information concerning where DHS was holding children, meaning that lawyers did not even know where to go to offer their services. News stories published only in this past week revealed that unaccompanied children were being held in hotels in different cities along or near the U.S.-Mexico border.[5] And there is no indication that DHS is informing the children that they have any legal rights, much less the right to contact a lawyer.

19. I am aware that there are potentially dozens of unaccompanied children currently held in the Hampton Inn & Suites in McAllen, TX. If KIND were able to access these children, attorneys from our organization would screen them for relief and conduct the advocacy and representation that I describe above, including advocating for the children to be taken out of the

---

[5] *E.g.*, Normaan Merchant, Associated Press, "Migrant kids held in US hotels, then expelled" (July 22, 2020), *available at* https://apnews.com/c9b671b206060f2e9654f0a4eaeb6388 (last visited July 23, 2020).

Title 42 Process and sent to ORR.  After the children are sent to ORR custody, provided they were sent to the facilities we staff, we would then either represent the children themselves in their immigration matters, or secure them other pro bono or legal services lawyers who could represent them.  But if they are deported or moved to other unknown locations, our ability to provide them meaningful representation would be defeated.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed and Dated:   July 24, 2020, in Lake Placid, New York.

_____/s_____

Maria M. Odom, Esq.